1   KENNETH D. NYMAN
    NYMAN & THOMAS
2   801W. Bannock St.., Ste 900
    Boise, Idaho 83701
3   (208) 336-3250

4   CHRIST T. TROUPIS
    TROUPIS & SUMMER LAW OFFICE
5   1406 East First St., Ste 101
    P.O. Box 1367
6   Meridian, Idaho 83680
7   (208) 288-0500

8   Attorneys for Plaintiff Douglas K. Limkeman

9

10              IN THE UNITED STATES DISTRICT COURT

11                      DISTRICT OF IDAHO

12

    DOUGLAS K. LIMKEMAN,              )   Case No.   CIV99 - 0570 - E - BLW
13                                    )
                    Plaintiff,        )   COMPLAINT AND
14                                    )   DEMAND FOR JURY TRIAL
    vs.                               )
15                                    )
    IDAHO MINERALS INC., LLC, an      )
16  Idaho Corporation, IDAHO MINERALS )
    INC., an Idaho Corporation,       )
17  WOUNDED BULL RESOURCES,           )
    INC., a Nevada Corporation,       )
18  MONETA PORCUPINE MINES,           )
    INC., a Canadian Corporation,     )
19  Michael A. Werner, and John Does 1-10, )
    Inclusive,                        )
20                                    )
                    Defendants.       )
21  ──────────────────────────────────)

22

23          COMES NOW Plaintiff, through his attorneys of record, and for his causes of action against

24  Defendants, and each of them, alleges as follows:

25

    **Complaint and Demand for Jury Trial        1**

1

## JURISDICTIONAL ALLEGATIONS

2      1.  This action arises under the provisions of Idaho law. This court has jurisdiction of

3  the matter under 28 U.S.C. Section 1332 in that there is complete diversity between Plaintiff and

4  the Defendant herein, and the amount in controversy is in excess of the sum of $100,000.00

5  excluding interest, costs and attorneys fees.  Venue is properly set in the District of Idaho in that

6  the principal claims arise from Defendants' failure to honor the terms of two contracts, one

7  which granted to Plaintiff a profits interest in Idaho Minerals Inc., an Idaho Corporation, and one

8  which retained Plaintiff as its marketing director.

9      2.  At all times material hereto, Plaintiff was a resident of the County of Los Angeles,

10  State of California.

11      3.  Defendant Idaho Minerals, Inc., LLC is a Limited Liability Corporation organized

12

13  under the laws of the State of Idaho and doing business in Malad, Caribou County, Idaho.

14  Defendant Michael A. Werner is the President of Idaho Minerals Inc., LLC.

15      4.  Defendant Idaho Minerals, Inc., is an Idaho corporation duly organized under the laws

16  of the State of Idaho, and doing business in Malad, Caribou County, Idaho.  Defendant Idaho

17  Minerals Inc., is a wholly owned subsidiary of Wounded Bull Resources, Inc., a Nevada

18  Corporation.

19      5.  Defendant Wounded Bull Resources, Inc., is a Nevada corporation , doing business in

20

21  Malad, Caribou County, Idaho.  Defendant Wounded Bull Resources, Inc. is a wholly owned

22  subsidiary of Moneta Porcupine Mines, Inc., a Canadian Corporation.

23      6.  Defendant Moneta Porcupine Mines, Inc., is a corporation organized under the laws of

24  Canada and doing business in the United States and Canada with subsidiaries in the State of Idaho.

25

**Complaint and Demand for Jury Trial**    **2**

7.  The true names of Defendants John Doe 1-10, are not presently known to the Plaintiff. Their places of residence are presently unknown to the Plaintiff.  On information and belief, Plaintiff alleges that John Doe Defendants 1-10, consulted, participated, acted, directed, encouraged, and/or ratified in concert with the other named Defendants, the acts alleged herein. These Doe Defendants are therefore in some manner responsible for the damages which Plaintiff sustained herein.

8.  Plaintiff is informed and believes and therefore alleges that the Defendants and each of them are and at all times mentioned herein were, the agent, servant, representative and employee of each of the other Defendants and, in doing the actions alleged herein, acted within the course and scope said agency and employment.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

9.  Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-8, inclusive, as though set forth herein in full.

10.  Prior to August 17, 1995, Plaintiff Limkeman and Victor Erickson negotiated with the principals of National Perlite Products Company and Oglebay Norton Company and obtained from those entities an Option Agreement, hereinafter the NPPC Option.  The terms of the NPPC Option gave Limkeman and Erickson the right to purchase National Perlite Products Company, hereinafter NPPC, for the sum of $1.85 million.

11. On August 17, 1995, Victor Erickson, acting on behalf of both Erickson and Limkeman, entered into an agreement with Defendant Wounded Bull Resources, Inc., hereinafter WBRI, under the terms of which Erickson granted to WBRI the exclusive right to exercise the option previously acquired by Erickson and Limkeman with respect to the acquisition of NPPC. As consideration for and under the terms of the agreement with WBRI, Erickson was to receive a 20% Net Profits

**Complaint and Demand for Jury Trial        3**

1  Interest in the business covered by the agreement.  A true and accurate copy of that agreement is

2  attached hereto, marked Exhibit A, and incorporated herein by this reference.

3      12. On or about February 8, 1996, WBRI exercised the option granted to it by Erickson, by

4  funding confirmation studies performed under the NPPC option agreement, and then purchasing all

5  of the shares of the common stock of National Perlite Products Company.

6      13. On or about September 1, 1996, Victor Erickson assigned to Plaintiff Douglas

7  Limkeman one-half (1/2) of the Net Profits Interest referred to in the WBRI Agreement.  A true and

8  accurate copy of that Agreement is attached hereto, marked Exhibit B, and incorporated herein by

9  this reference.

10

11      14. In February, 1996, after acquiring all of the stock of National Perlite Products Company,

12  WBRI assumed control of all of its corporate activities, and renamed it Idaho Minerals Inc. On or

13  about May 1, 1996, Idaho Minerals Inc. retained Plaintiff as its Sales and Marketing Director.

14  Plaintiff was to be compensated at the rate of $7,500/month for his work in that capacity.  Attached

15  hereto, marked Exhibit C, is a true and accurate copy of the Plaintiff's employment agreement with

16  Idaho Minerals Inc.

17      15. During the period from February, 1996 through July 1, 1999, WBRI directed the

18  management and operations of IMI, including the production and sale of perlite products in and

19  from Idaho.  Plaintiff was actively engaged as Sales and Marketing Director in those activities

20  during that entire time period.

21

22      16. Prior to July 2, 1999, Defendant Moneta Porcupine Mines Inc., hereinafter MONETA,

23  entered into an agreement with Michael A. Werner to sell all of Moneta's right, title and interest in

24  the assets and business of Idaho Minerals Inc.  On or about July 2, 1999, the business and assets of

25  Idaho Minerals Inc. were sold by Moneta to Michael A. Werner and John Does 1-5.

**Complaint and Demand for Jury Trial        4**

1    17. Plaintiff received notification of the above sale of Idaho Minerals Inc. by faxed notice on

2   July 2, 1999. He was also notified at that time that he had no further corporate authority for Idaho

3   Minerals Inc. This notice thus constituted an effective termination of Plaintiff's employment with

4   Idaho Minerals Inc. A true and accurate copy of that notification is attached hereto, marked Exhibit

5   D, and incorporated herein by this reference.

6

7
                                  **SECOND CLAIM FOR RELIEF**
8                                 **(Breach of Employment Agreement)**

9    18. Plaintiffs incorporate the allegations set forth above in Paragraphs 1-17 as though set

10  forth herein in full.

11   19. Pursuant to the terms of his employment agreement with Idaho Minerals, Inc.,

12  Plaintiff earned and was entitled to receive compensation for his services at the rate of

13  $7,500.00/month for the period from September 1, 1996 through and including June 30, 1999.

14  Plaintiff has fully performed all of his duties and responsibilities under the terms of that

15  agreement.

16   20. The total compensation due and owing to Plaintiff for the period of his employment

17  with Idaho Minerals Inc. is the sum of $255,000.00. Defendant Idaho Minerals Inc. has paid

18  Plaintiff the total sum of $104,500.00 during that period.   The balance due, owing and unpaid

19  for Plaintiff's compensation is the sum of $150,500.00, together with interest as allowed by law.

20

21   21. Plaintiff has made demand upon Defendant Idaho Minerals Inc. for payment of the

22  compensation still owing to him under the terms of his agreement with that Defendant. However,

23  Defendant has breached its contract with Plaintiff by failing and refusing to pay the sum of

24  $150,500 or any sums to him.

25

**Complaint and Demand for Jury Trial        5**

22. The amounts due to Plaintiff constituted wages as defined in Idaho Code Sec. 45-615. Defendant's failure to pay Plaintiff's wages was in violation of the provisions of Idaho Code Sec. 45-615 for which Defendant is liable for treble the amount of such wages.

## THIRD CLAIM FOR RELIEF
### (Breach of Net Profits Agreement)

23. Plaintiff incorporates the allegations set forth above in Paragraphs 1-22 as though set forth herein in full.

24. By reason of its execution of the WBRI Option Agreement with Erickson and the assignment to Plaintiff Limkeman of a one-half interest in the rights of Erickson under that agreement, WBRI owed a duty to account for and pay to Plaintiff 10% of the Net Profits realized from the business of Idaho Minerals Inc. during the period from February 8, 1996 through and including July 1, 1999.

25. Plaintiff is informed and believes and on that basis alleges that Net Profits were realized from the business of Idaho Minerals Inc. during the period it was owned and operated by WBRI. However, Defendant WBRI breached the above contract by failing to account for or to pay over to Plaintiff any sums due under the terms of the WBRI contract.

26. On July 2, 1999, Defendants Moneta and WBRI sold the business and assets of Idaho Minerals Inc. for $3,000,000.00. Plaintiff is informed and believes that a portion of the proceeds of that sale constituted profits arising from the business of Idaho Minerals Inc., and that Plaintiff was entitled to a proportionate share of those profits. To date, Defendants have failed and refused to account for or pay over to Plaintiff any sums due under the WBRI agreement.

27. By reason of the foregoing facts, Plaintiff has been damaged in an amount unknown to him at this time, but which he believes is in excess of the sum of $500,000.00. Plaintiff will seek

**Complaint and Demand for Jury Trial        6**

1  leave to amend this complaint to state the true amount of said damages when the same have been

2  ascertained.

3  <center>**FOURTH CLAIM FOR RELIEF**
**(Breach of the Covenant of Good Faith)**</center>

4

5  28. Plaintiffs incorporate the allegations set forth above in Paragraphs 1-27 as though set

6  forth herein in full.

7  29. There is implied in every contract a duty of good faith and fair dealing owed by each

8  party to the other. The willful, intentional and deliberate violation of that duty constitutes bad

9  faith.

10  30. The WBRI agreement contemplated that Defendants Wounded Bull Resources, Inc.,

11  and Moneta Porcupine Mines Inc. would acquire a controlling ownership interest in National

12  Perlite Products Company, and that Plaintiff would retain a 10% Net Profits Interest in any

13  business resulting from that acquisition. As a result of that transaction, Plaintiff owns a 10% Net

14  Profits Interest in the business of Idaho Minerals Inc. or its successor in interest, Idaho Minerals

15  Inc. LLC. Plaintiff's interest is unlimited in duration and survives any sale, transfer or other

16  hypothecation of ownership of the business.

17

18  31. The WBRI agreement contemplated that Defendants Wounded Bull Resources, Inc.,

19  and Moneta Porcupine Mines Inc. would acquire a controlling ownership interest in National

20  Perlite Products Company, and that Plaintiff would have no control over the corporate

21  management of that Company. As a result, it was contemplated that the preservation and

22  protection of Plaintiff's Net Profits Interest was completely in the hands and under the sole

23  control of Defendants. Plaintiff's Net Profits Interest was to be preserved, accounted for, and

24  paid by Defendants during the course of their ownership of National Perlite Products Company,

25  and upon any disposition of the Company or its business or assets to a third party.

**Complaint and Demand for Jury Trial          7**

32. The duty of good faith and fair dealing required Defendants not to act in such a manner as to deny Plaintiff the full benefit of the WBRI agreement. Defendants had an obligation to promote the business of Idaho Minerals Inc., to account and report periodically to Plaintiff as to its profits, to pay Plaintiff sums due and owing to him under the agreement, and to preserve Plaintiff's Net Profits Interest in the disposition or sale of the business and assets of the Company to a third party.

33. Defendants were at all times aware of these duties owed to Plaintiff. Defendants were at all times aware that Plaintiff's Net Profits Interest was to survive the sale or other hypothecation of the business of Idaho Mineral Products, Inc. Plaintiff had no right or authority to participate in the negotiation or sale of Idaho Mineral Products, Inc. Defendants at all times held exclusive control over the operations of Idaho Mineral Products, Inc., and the sale of its assets and business.

34. As alleged herein-above, Defendants WBRI and Moneta have failed to account for and pay to Plaintiff any portion of the Net Profits Interest due and owing to him. Plaintiff is informed and believes, and on that basis alleges that Defendants WBRI and Moneta have likewise failed to preserve and protect Plaintiff's Net Profits Interest when Defendants sold the business and assets of Idaho Mineral Products, Inc. to Defendants Michael A. Werner and John Does 1-5.

35. By reason of the foregoing, Plaintiff has been damaged in a sum unknown to him at this time, but which he believes is in excess of the sum of $500,000.00. Plaintiff will seek leave of court to amend this complaint to state the true amount of these damages when the same have been ascertained.

**Complaint and Demand for Jury Trial        8**

### FIFTH CLAIM FOR RELIEF
### (Conversion by Defendants WBRI and MONETA)

36. Plaintiffs incorporate the allegations set forth above in Paragraphs 1-35 as though set forth herein in full.

37. On July 2, 1999, Plaintiff was the owner and entitled to possession of a portion of the proceeds of the sale of Idaho Minerals Inc. business and assets received by Defendants WBRI and Moneta.

38. Defendants WBRI and Moneta have wrongfully withheld from Plaintiff the foregoing proceeds, with the intention of permanently depriving Plaintiff of them.

39. By reason of the foregoing facts, Plaintiff has been damaged in a sum unknown to him at this time, but which he believes is in excess of the sum of $500,000.00.  Plaintiff will seek leave of court to amend this complaint to state the true amount of these damages when the same have been ascertained.

### SIXTH CLAIM FOR RELIEF
### (Accounting)

40. Plaintiffs incorporate the allegations set forth above in Paragraphs 1-39 as though set forth herein in full.

41. Plaintiff is entitled to an accounting by Defendants of the income and profits of Idaho Minerals Inc., during Defendants' ownership and control of that company and of the proceeds of the sale of Idaho Minerals Inc. by Defendants on July 2, 1999.

### SEVENTH CLAIM FOR RELIEF
### (For Constructive Trust)

42. Plaintiffs incorporate the allegations set forth above in Paragraphs 1-41 as though set forth herein in full.

**Complaint and Demand for Jury Trial        9**

43. By reason of the foregoing facts, a constructive trust should be declared to exist as to the monies due and owing to Plaintiff by Defendants WBRI and Moneta; they should be adjudged to hold the monies due and owing to Plaintiff as constructive trustees, and should be required to account for and turn over those funds.

## EIGHTH CLAIM FOR RELIEF
### (Unfair Trade Practices)

44. Plaintiffs incorporate the allegations set forth above in Paragraphs 1-43 as though set forth herein in full.

45. Prior to Moneta's acquisition of Idaho Minerals Inc., Plaintiff provided to Moneta confidential information with respect to the Perlite business in the United States and worldwide, including production, marketing and sale information which he had accumulated over a period of many years while working in the industry. The information provided by Plaintiff was not known to Defendants and was not generally available to the public. This information was essential to obtaining financing to increase the manufacturing capacity of Idaho Minerals Inc., and generate sales of perlite. Plaintiff provided this information to Moneta for the limited purpose of obtaining that financing and subject to the agreement of the parties that the information was confidential and would be used by Moneta for the joint benefit of the parties in developing the business of Idaho Minerals Inc.

46. After Moneta acquired Idaho Minerals Inc., and was provided confidential business information by Plaintiff, Moneta did not obtain financing to develop the business potential of Idaho Minerals Inc., but instead used the confidential information provided by Plaintiff to locate a buyer for the company. Plaintiff is informed and believes and on that basis alleges that Defendant Moneta disclosed to Michael A. Werner and John Does 1-5, the confidential business information provided to Moneta by Plaintiff.

**Complaint and Demand for Jury Trial        10**

47. Plaintiff is informed and believes and on that basis alleges that without disclosure of the confidential information he provided to Moneta, the sale to Defendants Werner and John Does 1-5 would not have been completed. By reason of that sale, Plaintiff has been deprived of his right, title and interest in and to the business and assets of Idaho Minerals, Inc. Plaintiff is unaware of the exact amount of that interest, but believes it to be in excess of the sum of $500,000. Plaintiff will seek leave of court to amend this complaint to state the true amount of these damages when the same have been ascertained.

### NINTH CLAIM FOR RELIEF
### (Conversion by Defendants Werner and John Does 1-5)

48. Plaintiffs incorporate the allegations set forth above in Paragraphs 1-47 as though set forth herein in full.

49. On July 2, 1999, Plaintiff was the owner and entitled to possession of ten percent (10%) of the business and assets of Idaho Minerals Inc.

50. Defendants Michael A. Werner and John Does 1-5 purchased the business and assets of Idaho Minerals, Inc. from Defendant Moneta with knowledge of Plaintiff's retained ownership interest.

51. Defendants Werner and Does 1-5 have wrongfully denied that Plaintiff has any interest in the business and assets of Idaho Minerals, Inc., LLC, or its predecessor company, Idaho Minerals, Inc., and have withheld from Plaintiff any income or profits of that business. Moreover, said Defendants have failed and refused to acknowledge Plaintiff's ownership interest and to account to Plaintiff with respect to that business. Defendants have acted with the intention of permanently depriving Plaintiff of his interest in this company.

52. By reason of the foregoing facts, Plaintiff has been damaged in a sum unknown to him at this time, but which he believes is in excess of the sum of $500,000.00. Plaintiff will seek

**Complaint and Demand for Jury Trial       11**

1  leave of court to amend this complaint to state the true amount of these damages when the same

2  have been ascertained.

3  <center>**TENTH CLAIM FOR RELIEF**</center>
   <center>**(Declaratory Relief)**</center>

4

5  53. Plaintiffs incorporate the allegations set forth above in Paragraphs 1-52 as though set

6  forth herein in full.

7  54. There has arisen and now exists a dispute between Plaintiff and Defendants Werner,

8  Hess, Gresham, and Idaho Minerals Inc., LLC with respect to the ownership and right to receive

9  profits arising from the business of Idaho Minerals Inc. or its successor in interest. Plaintiff

10 contends that by reason of the WBRI agreement he is the owner and entitled to receive 10% of

11 the Net Profits of that business or the business of its successor in interest. Defendants contend

12 that Plaintiff has no ownership or entitlement with respect to any Net Profits.

13 55. Plaintiff desires a judicial declaration of the rights and liabilities of the parties with

14 respect to these claims. Declaratory relief is appropriate insofar as Plaintiff's rights are derived

15 and can be determined solely from the terms of the written contract with WBRI, and the

16 applicable Idaho law.

17

18

19 <center>**DEMAND FOR TRIAL BY JURY**</center>

20 Plaintiff herewith demands a trial by a six (6) person jury of the foregoing suit.

21 WHEREFORE, Plaintiff requests judgment against the Defendants as follows:

22 With respect to the First Claim for Relief:

23 1. For a determination of the respective rights and obligations of the parties under the trms

24    of their written contract, Exhibit A hereto.

25

**Complaint and Demand for Jury Trial        12**

2. For compensatory damages in a sum in excess of $500,000, in accordance with proof at the time of trial.

With respect to the Second Claim for Relief:

3. For compensatory damages in a sum in excess of $500,000, in accordance with proof at the time of trial.

With respect to the Third Claim for Relief:

4. For compensatory damages in a sum in excess of $500,000, in accordance with proof at the time of trial.

With respect to the Fourth claim for Relief:

5. For compensatory damages in a sum in excess of $500,000, in accordance with proof at the time of trial.

With respect to the Fifth Claim for Relief:

6. For compensatory damages in a sum in excess of $500,000, in accordance with proof at the time of trial.

With respect to the Sixth Claim for Relief:

7. For an accounting of all income, expenses, and profits of the business of Idaho Minerals, Inc.;

8. For an accounting of the proceeds of the sale of Idaho Minerals Inc. to Michael A. Werner and John Does 1-5;

With respect to the Seventh Claim for Relief:

9. For compensatory damages in a sum in excess of $500,000, in accordance with proof at the time of trial.

10. For imposition of a constructive trust;

With respect to the Eighth Claim for Relief:

11. For compensatory damages in a sum in excess of $500,000, in accordance with proof at the time of trial.

With respect to the Ninth Claim for Relief:

12. For compensatory damages in a sum in excess of $500,000, in accordance with proof at the time of trial.

With respect to the Tenth Claim for Relief:

13. That the court impose a constructive trust upon such terms as it deems just and reasonable in the premises;

With respect to all Counts:

14. That plaintiffs recover costs of suit incurred herein;

15. That plaintiffs recover their reasonable attorneys' fees incurred herein;

16. That plaintiffs have such other and further relief as the Court may deem just and proper.

Dated: November 30, 1999.

**Christ T. Troupis**
**Attorneysfor Plaintiff**

**Kenneth D. Nyman**
**Attorneys for Plaintiff**

**Complaint and Demand for Jury Trial        14**

② 2

This Agreement is made as of August 17, 1995 between:

    V. Erickson Consultants Ltd.
    1280 - 625 Howe Street,
    Vancouver, B. C. V6C 2T6, (hereinafter "Erickson")

And:    Wounded Bull Resources, Inc.
    104 Pine Street South,
    Timmins, Ontario, (hereinafter "WBRI")

The parties agree as follows:

1.     Erickson grants WBRI the exclusive option (the "Option") to acquire all of its interest in an agreement (the "Agreement") with National Perlite Products Company and Oglebay Norton Company relating to the purchase of all of the stock of National Perlite Products Company.

2.     WBRI will pay as consideration for the Option:

i)     all sums required to be expended by Erickson under the Agreement, and
ii)     to Erickson, a 20% Net Profits Interest ("NPI"), as defined in the attached Schedule "A", as realized from the business covered by the Agreement.

3.     Notwithstanding clause 2(ii) above, WBRI and Erickson may alter the said 20% NPI by mutual agreement to provide for equivalent payment comprising advance payments and reduced later payments, all equating to a similar net present value at 10%, for the said 20% NPI.

4.     The parties or their assignees will do such acts and execute such documents as are required to effect the terms of this Option.

5.     For so long as WBRI is current in its obligations hereunder, Erickson shall, on request, execute such assignment documents as are required to effect WBRI having exercised the Option herein. In the event WBRI elects not to exercise the Option, it will endeavour to provide Erickson with notice of such non-election at least 30 days prior to the Closing Date as defined in the Agreement.

6.     After WBRI has exercised the Option, the parties envisage that the business contemplated therein be operated in accordance with a plan developed and managed by Erickson and revised as required. Management of the business will be by committee with two members appointed by WBRI and two appointed by Erickson. One of WBRI's appointees shall chair the management committee.

Signed by the parties August 17, 1995.

_____
WBRI

_____
Erickson

EXHIBIT "A"

## SCHEDULE "A"

## NET PROCEEDS, NET PROFITS AND CERTAIN OTHER DEFINITIONS

For all purposes of this Agreement and the attached Schedules, the following words shall have the following meanings:

1. "Assets" means the Mining Claims, Facilities, Products, Supplies and all other assets of whatsoever nature owned or aquired by the Optionee with respect thereto;

2. "Development Program" means a detailed development plan and budget for Development Program Costs prepared with a view to achieving production in accordance with the Feasibility Report;

3. "Development Program Costs" means all cash, expenses, obligations and liabilities of whatever kind or nature spent or incurred directly or indirectly by the Optionee in connection with the implementation of the plan of development set forth in the Feasibility Report;

4. "Expenditures" means all cash, expenses and obligations spent or incurred by the Optionee from the date of this Agreement in connection with the exploration of the mining claims in accordance with the terms of the Agreement, including without limiting the generality of the foregoing, monies expended in maintaining the mining claims in good standing by doing and filing assessment work, in doing geophysical, geochemical and geological surveys, drilling, drifting and other underground work, assaying, metallurgical testing and engineering, in preparing a Feasibility Report and Development Program, in paying the fees, wages, salaries and travelling expenses of all persons engaged in such work with respect to and for the benefit of the mining claims;

5. "Facilities" means all mines, plants and facilities, including, without limitation, all pits, shafts, haulageways and other underground workings, all buildings, plants, facilities and other structures, fixtures and improvements, and all other property, whether fixed or moveable, as the same may exist at any time in, or on the mining claims and relating to the operation of the mining claims as a mine or outside the mining claims if for the exclusive benefit of the mining claims only;

6. "Feasibility Report" means a detailed report prepared or verified by an independent firm of consultants demonstrating the feasibility of placing the mining claims, or any part thereof, into commercial production and shall include a reasonable assessment of the

– C-2 –

mineable ore reserves and their amenability to
metallurgical treatment, a complete description of the
work, equipment and supplies required to bring the
mining claims into commercial production and the
estimated cost thereof, a description of the mining
methods to be employed and a financial appraisal of the
proposed operations, ~~supported by at least the following.~~

7.    "Gross Proceeds" means, for any period, the aggregate
gross revenues (after deduction of the royalties paid to
third parties                    ) received during
the period from the operation of the mining claims as a
mine, interest and investment income and any cash
proceeds received during the period from the disposition
of Assets, the cost of which has been treated as a
Pre-production Expense or a Post-production Capital
Expense;

8.    "Net Proceeds" means, for any period, the excess, if
any, of Gross Proceeds for the period over the aggregate
of:

   8.1   Operating Costs for the period;

   8.2   Operating Costs for all previous periods to the
extent they have exceeded Gross Proceeds from such
periods and have not previously been deducted in
computing Net Proceeds; and

   8.3   such amount of working capital (which shall not
include accounts receivable arising from the sale
of Products or inventory of Products) as recorded
on the accounts of the Optionee as is reasonably
required for the operation of the mining claims as
a mine, PROVIDED that this amount shall be added
to the Gross Proceeds in calculating the Net
Proceeds for the next period;

9.    "Net Profits" means, for any period, the excess, if any
Net Proceeds for the period and all preceding periods
over the aggregate, without duplication, of:

   9.1   all Pre-production Expenses;

   9.2   all Post-production Capital Expenses incurred up
to the end of that period;

   9.4   the aggregate of the amounts on which Net Profit
payments to the Non-operator were due and payable
under this subsection 9.4 in any preceding period;

3.

10.    "Operating Costs" means, for any period, all costs,
       expenses, obligations, liabilities and charges of
       whatsoever kind or nature incurred or chargeable,
       directly or indirectly by the Optionee, after
       commencement of production, in connection with the
       operation of the mining claims as a mine during the
       period, which costs, expenses, obligations, liabilities,
       and charges shall include, without limiting the
       generality of the foregoing, the following:

    10.1   all costs of or related to the mine and
           concentrating of ores or other products and the
           operation of the mining facilities consistent with
           industry practice;

    10.2   all costs of or related to marketing of mineral
           products including, without limitation,
           transportation, commissions, and/or discounts;

    10.3   all costs of maintaining in good standing or
           renewing from time to time the mining claims and
           other tenements or any interest therein including
           the payment of all rents, government royalties,
           other royalties, advance royalties and taxes of
           any nature whatsoever in connection therewith;

    10.4   all costs of or related to providing and/or
           operating employee facilities, including housing;

    10.5   all duties, charges, levies, royalties, taxes
           (excluding taxes levied under any acts or laws of
           any competent legislative authorities which tax
           the income of the parties hereto individually) and
           other payments imposed upon or in connection with
           operating the mining claims as a mine by any
           government or municipality or department or agency
           thereof;

    10.6   all costs of consulting, legal, accounting,
           auditing, insurance and other services;

    10.7   all amounts expended in doing work hereunder;

    10.8   all costs of construction, equipment, mine
           development, after commencement of production,
           including maintenance, repairs and replacements,
           except capital expenditures relating to a major
           improvement, expansion, modernization or
           replacement of the mining facilities (for the
           purposes hereof, a major improvement, expansion,
           modernization or replacement of the mining
           facilities is one which involves an aggregate cost
           of more than $ 00,000);

4.

10.9   all costs for pollution control, reclamation or
       any other similar costs incurred or to be incurred
       as a result of any governmental regulations or
       requirements consistent with industry practice;

10.10  any costs or expenses incurred or to be incurred
       relating to the termination of the operation of
       the mining claims as a mine consistent with
       industry practice;

10.11  uninsured losses on Facilities;


and Operating Costs shall be determined in accordance
with generally accepted accounting principles
consistently applied, except that such costs shall not
include the non-cash expense items such as depreciation,
depletion or amortization of Pre-production Expenses,
Post-production Capital Expenses, accounts receivable
arising from the sale of Products and inventory of
Products;


11.   "operating the mining claims as a mine" or "operation of
      the mining claims as a mine" means any or all of t·
      mining, milling, smelting, and refining of ores,
      minerals, metals or concentrates derived form the mining
      claims;

12.   "Post-production Capital Expenses" means all costs
      expended or incurred by the Optionee, after the 30th
      consecutive day during which the mining claims have been
      operated as a mine, in connection with a maⁱ
      improvement, expansion, modernization or repˍacement of
      the mining facilities as are excepted from Operating
      Costs;

13.   "Pre-production Expenses" means all Expenditures and
      Development Program Costs of the Optionee;

14.   "Products" means the mineral products derived form
      operating the mining claims as a mine;

15.   "Supplies" means all tangible personal property of a
      non-capital nature (other than Products or Facilities)
      acquired or held with respect to the mining claims.

③

## ASSIGNMENT OF NET PROFITS INTEREST

THIS ASSIGNMENT OF NET PROFITS INTEREST (the "Assignment") dated September 1, 1996 is from V. F. Erickson Consultants Ltd., a British Columbia corporation ("Erickson") with its registered office at 3741 West 36th Avenue, Vancouver, B. C. V6N 2S3, to Douglas K. Limkeman ("Limkeman"), whose address is 3459 Brayton Avenue, Long Beach, CA   90807.

**WHEREAS:**

A.   Erickson and Limkeman have participated co-operatively and in partnership in the development of a perlite mining, processing and marketing business since 1994;

B.   Erickson acquired an option (the "NPP Option") to acquire all of the stock of National Perlite Products Company pursuant to an agreement with Oglebay Norton Company as of August 17, 1995;

C.   Erickson granted Wounded Bull Resources, Inc. ("WBRI") an option (the "WBRI Option") to acquire all of Erickson's interest in the NPP Option under the agreement dated August 17, 1995, as attached hereto, subject to the retention by Erickson of a 20% Net Profits Interest (the "NPI") as defined therein;

D.   WBRI exercised the WBRI Option by funding the confirmation studies performed under the NPP Option, and subsequently on February 8, 1996 exercising the NPP Option by purchasing all of the shares of National Perlite Products Company;

E.   Pursuant to the exercise of the WBRI Option, Erickson has the right to take formal assignment of the NPI from WBRI, subject to revisions as may be negotiated with WBRI; and

F.   Erickson has granted up to 10% of the NPI to one Rodney D. Knutson of Denver, Colorado for certain legal and other services provided during and subsequent to the acquisition of the NPP Option.

NOW THEREFORE FOR GOOD AND VALUABLE CONSIDERATION, it is hereby agreed as follows:

1)   Erickson hereby grants, conveys and assigns to Limkeman, and to Limkeman's successors and assigns, one-half of Erickson's interest in the NPI, as defined in the WBRI Option;

2)   Erickson and Limkeman shall in good faith negotiate any revisions to their interests in this Assignment consequent to any change in the NPI as defined in the agreement with WBRI;

EXHIBIT B

3)   Erickson and Limkeman shall not encumber the NPI with any third party rights or interests without the written concurrence of the other;

4)   Erickson and Limkeman shall not assign any portion of the NPI, save and except that due to the aforementioned Rodney Knutson, as finally determined, without the written consent of the other, which consent shall not be unreasonably withheld; and

5)   Erickson and Limkeman shall disclose to one another all dealings and communications with WBRI and its parent and affiliates in respect of the NPI and shall in good faith not take any action with WBRI which would prejudice, harm or otherwise encumber the other's interest in the NPI.

IN WITNESS WHEREOF, the parties have executed this Assignment on, and effective as of the date first written above.

The CORPORATE SEAL of                )
V. F. ERICKSON CONSULTANTS LTD. was   )
hereunto affixed in the presence     )
of:                                  )
                                     )

C/S

SIGNED, SEALED & DELIVERED by        )
DOUGLAS K. LIMKEMAN                   )
in the presence of:                  )
                                     )
_____)
Signature of Witness                 )          4/15/97
                                     )
_____)
Address of Witness                   )     Douglas K. Limkeman
                                     )
_____)
Occupation of Witness                )

c:\...\wbci\...\assign.npi

SENT BY: NONE TA PORCUPINE;          4-29-96 12:53PM; 7052677490 =>                    #1/2



# IDAHO MINERALS INC.

Administrative Office
Box 1756-104 Pine Street South
Timmins, Ontario
P4N 7W9 Canada
Phone (705) 264-2296
Fax   (705) 267-7490
April 29, 1996


Mr. D. K. Limkeman
3459 Brayton Avenue
Long Beach, California
90807, U.S.A.
by fax (310) 490-9935


Dear Doug:

Re: Proposed Management of Idaho Minerals Inc.


This will confirm our recent discussions that we are
now in a position to establish formal contracts with
key personnel for the management of Idaho Minerals.

We intend that you become full-time Sales and Marketing
Director, and assume responsibility for all aspects of
sales contracts for Idaho Minerals' product, both
processed and otherwise.  You will report directly to
Vic Erickson, and are expected to provide monthly
reports to Fran Yungwirth and Rod Whyte to detail your
activities, objectives and expectations.  The
remuneration for this position is $7,500 per month, all
inclusive.

In addition, we will pay out-of-pocket expenses for
travel and sales related costs monthly as invoiced and
approved, normally within seven days of receipt of
invoices.

EXHIBIT  C

29-APR-1996   17:29

As you and Vic Erickson will share in a 20% net profits
interest in the project, it is obvious that your
success in establishing a market share will be
reflected directly in the project and consequently in
the value of your share of the net profits interest.
Accordingly, we consider it appropriate for your
initial contactual period to be for seven months
commencing April 15, 1996.  Upon successful negotiation
of project finance, this initial contract will mature
into an annual contract on similar terms.  In
recognition of your personal situation, we are offering
an advance of 1-1/2 months' direct remuneration on
acceptance, such amount to be credited against the next
annual contract.

If you are in agreement with these terms, kindly sign
and fax back a copy of this letter, forwarding the
original by first class mail.

Sincerely,


_____          _____
R. C. Whyte, Chairman            F. P. Yungwirth, Director


Agreed: _____ 5/1/96. _____
        D. K. Limkeman              Witness

Date:  29. 4 .96

**Moneta Porcupine Mines Inc**

Established 1910

July 2, 1999

Mr. Doug Limkeman
3459 Brayton Avenue
Long Beach, CA 90807 U.S.A.
by fax to (562) 490-9899



(14)

Box 756
104-89 Pine Street South,
Timmins, Ontario P4N 7W8
Canada

Telephone (705) 264 2196
Facsimile (705) 267 7490
E-Mail moneta@idenet an. ca
www.monetaporcupine.com

Dear Doug:

Moneta Porcupine Mines Inc. has entered an agreement to
sell virtually all of its American assets. This
includes all the assets and business of Idaho Minerals
Inc. ("IMI"), as you know it. Closing occurs at the
close of business on Friday, July 2, 1999. The
purchaser is directed by Michael Werner.

This is to advise you that we will be concluding all
our involvement in IMI business effective immediately.
You are not to hold yourself out as representing IMI
nor do anything on behalf of IMI. You no longer have
any corporate authority.

We believe that Moneta's decision to sell its American
assets will be in the best interests of the IMI
business and the community. We have enjoyed our
association with you.

Kindly contact me if there are any questions.

Sincerely,
MONETA PORCUPINE MINES INC., WOUNDED BULL RESOURCES
INC. and IDAHO MINERALS INC.

F. P. Yungwirth, Secretary

EXHIBIT D